**C.S.C.S., INC., Appellant,**

v.

**Linden Josh CARTER, Appellee.**

No. 05–03–00138–CV.

Court of Appeals of Texas, Dallas.

Oct. 20, 2003.

Marilyn K. Lahr, Law Office of Marilyn K. Lahr, Dallas, for Appellant.

Kimberly Sumner Moore, Dallas, for Appellee.

Before Justices MOSELEY, RICHTER, and FRANCIS.

## OPINION

Opinion By Justice MOSELEY.

C.S.C.S., Inc. (CSCS) appeals the denial of its application for a temporary injunction in its lawsuit seeking to enforce a covenant-not-to-compete against its former employee, appellee Linden Josh Carter. In five issues, CSCS argues the trial court erred in denying the application for temporary injunction and in ruling on the application before CSCS had presented all of its testimony. We affirm the trial court's order.

CSCS manufactures and sells cast stone building materials. On July 17, 1997, Carter signed a document entitled "Confidentiality and Non–Compete Agreement," which we will refer to as the "Non–Competition Agreement." The Non–Competition Agreement stated:

In the course of your forthcoming employment [CSCS] may reveal certain confidential information that is deemed proprietary. In the interest of avoiding

any misunderstandings about the basis on which this information is disclosed to you, we ask that you agree to the following terms.

1. You agree not to disclose to others any information regarding the methods and procedures that [CSCS] uses in the course of its daily business.

2. You further agree not to work for a competitor of [CSCS] for two years after your last day of employment.

Underneath this language and above Carter's signature line is the following: "I have read and understand the above Confidentiality and Non–Compete Agreement."

Four days later, on July 21, 1997, Carter and CSCS signed an employment agreement that stated it was effective July 14, 1997. The agreement was for a term of twenty-four months; the first month would consist of a training period for which Carter would not be compensated, and the remaining months were a probationary period at a monthly salary. After twenty-four months, the agreement would be re-negotiated or continue month-to-month until a new contract was negotiated. The employment agreement did not specify the bases for which the agreement could be terminated. The evidence is conflicting as to whether Carter began working on July 14 or July 21, 1997.

CSCS filed suit alleging that Carter left its employment in January 2003, and that he was competing against CSCS in violation of the Non–Competition Agreement. CSCS obtained a temporary restraining

order prohibiting Carter from becoming employed by a competitor of CSCS. At the temporary injunction hearing, during direct examination of CSCS's general manager, the trial court suggested and the parties agreed it would be efficient to hear argument on the enforceability of the alleged agreements before continuing with evidence regarding confidential and proprietary information. After extended argument, the trial court dissolved the temporary restraining order prohibiting Carter from becoming employed by a competitor of CSCS and denied CSCS's temporary injunction application in that respect. (The parties agreed to a temporary injunction to protect certain "trade secret, proprietary, or confidential information," which the trial court later granted.) CSCS appeals the denial of its temporary injunction regarding the covenant-not-to-compete. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(4) (Vernon Supp. 2003).

■■■ The purpose of a temporary injunction is to preserve the status quo until the case can be tried on the merits. *Rugen v. Interactive Business Systems, Inc.,* 864 S.W.2d 548, 550 (Tex.App.-Dallas 1993, no writ). An applicant for a temporary injunction must plead and prove: (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim.[1] *Butnaru v. Ford Motor Co.,* 84 S.W.3d 198, 204 (Tex. 2002). Our review is strictly limited to de-

1. The parties cite the irreparable injury requirement for a temporary injunction, but do not address whether this requirement was met in this case. The First Court of Appeals recently concluded that a showing of irreparable injury is required to obtain a temporary injunction in a covenant-not-to-compete case. *See Cardinal Health Staffing Network v. Bowen,* 106 S.W.3d 230, 239–40 (Tex.App.-Hous-

ton [1st Dist.] 2003, no pet. h.). The Houston court indicated that its decision was in conflict with other decisions of this Court. *See id.* at 240. We need not address and decide this question because we conclude the trial court did not abuse its discretion in denying the temporary injunction on the probable right to relief requirement.

termining whether the trial court clearly abused its discretion in granting or denying the temporary injunction. *Strickland v. Medtronic, Inc.*, 97 S.W.3d 835, 837 (Tex.App.-Dallas 2003, pet. dism'd w.o.j.) (citing *Walling v. Metcalfe*, 863 S.W.2d 56, 58 (Tex.1993)). We do not consider the merits of the case or the ultimate enforceability of the covenant-not-to-compete; we review only the trial court's exercise of discretion in denying the temporary injunction. *See Tom James of Dallas, Inc. v. Cobb*, 109 S.W.3d 877, 883 (Tex.App.-Dallas 2003, no pet.). We do not substitute our judgment for that of the trial court, but determine only whether the trial court's action was so arbitrary as to exceed the bounds of reasonable discretion. *Id.*

### THE NON-COMPETITION AGREEMENT

In its first three issues, CSCS argues the trial court abused its discretion because CSCS showed the covenant-not-to-compete was ancillary to an otherwise enforceable agreement. *See* Tex. Bus. & Com. Code Ann. § 15.50(a) (Vernon 2002) (requirements for enforceable covenant-not-to-compete);[2] *Light v. Centel Cellular Co.*, 883 S.W.2d 642, 644, 647 (Tex.1994). We must make two initial inquiries as to the formation of the covenant-not-to-compete: "(1) is there an otherwise enforceable agreement, to which (2) the covenant not to compete is ancillary to or a part of at the time the agreement is made." *Light*, 883 S.W.2d at 644.

▮▮▮ Much of CSCS's argument appears to imply that for its Non–Competition Agreement to be enforceable, it need only show the existence of some other enforceable agreement between it and Carter. *Light* makes clear that not only must another otherwise enforceable agreement exist, but the Non–Competition Agreement must be "ancillary to or part of" that other agreement at the time it was made. *Light*, 883 S.W.2d at 643. For a covenant-not-to-compete to be "ancillary to or a part of" an otherwise enforceable agreement:

(1) the consideration given by the employer in the otherwise enforceable agreement must give rise to the employer's interest in restraining the employee from competing; and

(2) the covenant must be designed to enforce the employee's consideration or return promise in the otherwise enforceable agreement.

*Id.* at 647.

CSCS points to several other agreements between it and Carter that it claims were enforceable on July 17, 1997 (when the Non–Competition Agreement was signed) and to which the Non–Competition Agreement was ancillary or a part. We address these seriatim.

(1) The Employment Agreement

▮▮▮ CSCS first argues the Non–Competition Agreement was ancillary to or a part of the written employment agreement, which it claims was not an "at-will" agreement (and was thus enforceable) because it was for a term of twenty-four months. However, the written employment agreement did not exist when the

---

**2.** The Non–Competition Agreement does not contain limitations as to the geographic area of the activity to be restrained as required by § 15.50(a). CSCS requested the trial court to reform the covenant-not-to-compete under § 15.51(c) to "include the entire United States region, since Carter was responsible for sales nationwide, his training encompassed the entire United States region, and [CSCS's] sales market region have been nationwide." *See* Tex. Bus. & Com.Code Ann. § 15.51(c). We do not decide whether the trial court must reform a covenant-not-to-compete in the context of a temporary injunction as opposed to permanent relief.

Non–Competition Agreement was signed—it was not signed until four days later.

CSCS argues the evidence was undisputed that the Non–Competition Agreement and the written employment agreement were part of the same transaction—the hiring of Carter—and thus that the documents should be read together and treated as one document, even when they were executed on different dates and did not reference one another. *See Courage Co. v. Chemshare Corp.*, 93 S.W.3d 323, 333 (Tex.App.-Houston [14th Dist.] 2002, no pet.) (interpreting conflicting choice of forum provisions in separate documents executed at different times). This is a principle of document construction, however, and does not satisfy or override the clear requirement that a non-compete agreement be "ancillary to or part of an otherwise enforceable agreement at the time the agreement is made." TEX. BUS. & COM.CODE ANN. § 15.50(a); *Light*, 883 S.W.2d at 644–45; *CRC–Evans Pipeline Int'l, Inc. v. Myers*, 927 S.W.2d 259, 263 (Tex.App.-Houston [1st Dist.] 1996, no writ) ("Under section 15.50, the relevant point in time is *the moment the agreement is made* . . . ." (Emphasis original.)). At the time the written employment agreement was made, the Non–Competition Agreement had been in existence for four days; as a result, the Non–Competition Agreement could not be "ancillary to or a part of" the written employment agreement at the time the employment agreement was made.

In a post-submission brief, CSCS argues that everything in the employment agreement (signed July 21) was orally agreed to on July 17, when the Non–Competition Agreement was signed, and the written employment agreement was merely a convenient memorial of the prior oral agreement. CSCS also argues that

the written employment agreement expressly states it was effective July 14, 2000, and was an otherwise enforceable agreement at the time the Non–Competition Agreement was signed on July 17, 2000. However, an oral agreement for employment for more than one year is within the statute of frauds and unenforceable. *See Gilliam v. Kouchoucos*, 161 Tex. 299, 340 S.W.2d 27, 28–29 (1960) (employment agreement for ten years required to be in writing); *Young v. Ward*, 917 S.W.2d 506, 511–512 (Tex.App.-Waco, 1996, no writ). Assuming it was made on July 17, CSCS's alleged oral agreement to employ Carter for two years was unenforceable at the time and would not support the Non–Competition Agreement. Even had the oral agreement been enforceable, an employment agreement for a term will not support a covenant-not-to-compete. *See Light*, 883 S.W.2d at 646 n. 10 ("[E]ven if [the notice of termination] provision created an employment contract for a term of two weeks, the covenant at issue would not be ancillary to such an agreement.").

Moreover, the requirement that a noncompete agreement be ancillary to or part of an otherwise enforceable agreement "at the time the agreement is made" recognizes that agreements are often amended or supplemented, and expresses a "legislative intent that such amendments or supplements cannot 'tack on' a noncompete provision to a previously existing, enforceable agreement." *Donahue v. Bowles, Troy, Donahue, Johnson, Inc.*, 949 S.W.2d 746, 757 (Tex.App.-Dallas 1997, writ denied) (Moseley, J., concurring). Thus, even if we considered the written employment agreement as if it were executed on July 14, 2000 (which we do not), the July 17, 2000 Non–Competition Agreement could not "tack on" to it an enforceable covenant-not-to-compete. Based on the foregoing, we cannot conclude the trial

court abused its discretion in denying CSCS's request for a temporary injunction based on the argument that the Non–Competition Agreement was ancillary to or a part of the written employment agreement or an oral agreement for a two-year term. *See Tom James of Dallas, Inc.*, 109 S.W.3d at 883.

(2) Oral Agreement Not to Terminate Except for "Gross Misconduct"

 CSCS next argues the Non–Competition Agreement was ancillary to or part of an enforceable oral agreement that Carter's employment was not terminable except for "gross misconduct." In Texas, employment is presumed to be at-will, that is, it is terminable by either party for good cause, bad cause or no cause at all. *Montgomery County Hosp. Dist. v. Brown*, 965 S.W.2d 501, 502 (Tex.1998). To overcome this presumption, "the employer must unequivocally indicate a definite intent to be bound not to terminate the employee except under clearly specified circumstances." *Id.* A contract for a stated term of employment (or at a stated rate per week, month, or year) limits the employer's ability to terminate at will if the parties negotiated the terms of employment and intended to directly limit in a "meaningful and special way" the employee's at-will status. *See Smith v. SCI Mgmt. Corp.*, 29 S.W.3d 264, 267–68 (Tex.App.-Houston [14th Dist.] 2000, no pet.). A contract of employment for a term may still be at-will if the agreement allows termination for any reason. *See Curtis v. Ziff Energy Group, Ltd.*, 12 S.W.3d 114, 118 (Tex.App.-Houston [14th Dist.] 1999, no pet.) (term employment agreement allowing either party to terminate without cause was at-will).

 Generally, an at-will employment relationship standing alone is not an otherwise enforceable agreement. *Light*, 883 S.W.2d at 644–45; *Strickland*, 97

S.W.3d at 838. While an employment relationship terminable only for cause would be an otherwise enforceable agreement, a covenant-not-to-compete is not enforceable unless it is "ancillary to or a part of" that other agreement at the time the other agreement is made. TEX. BUS. & COM.CODE ANN. § 15.50(a). To be "ancillary to or a part of" an otherwise enforceable agreement, the non-compete covenant must be designed to enforce the employee's consideration or return promise in the otherwise enforceable agreement. *Light*, 883 S.W.2d at 646 n. 10, 647. The temporary injunction record contains no evidence Carter made any return promise in support of the alleged oral employment agreement. Even if an oral agreement limited CSCS's ability to terminate Carter at will, the trial court could have concluded that the covenant-not-to-compete was not ancillary to it.

Further, CSCS's alleged oral promise not to terminate Carter except for gross misconduct is similar to an employer's promise to give notice before termination, which has been held not to give rise to an employer interest in restraining an employee from competing. *See Am. Fracmaster, Ltd. v. Richardson*, 71 S.W.3d 381, 387 (Tex.App.-Tyler 2001, pet. granted, judgm't vacated w.r.m.); *see also DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 682 (Tex.1990) (noting business goodwill and confidential or proprietary information as examples of employer interests worthy of protection by covenant-not-to-compete). Thus, we cannot conclude the trial court abused its discretion in denying CSCS's request for a temporary injunction based on the argument that the Non–Competition Agreement was ancillary to or a part of an oral agreement not to terminate Carter except for gross misconduct. *See Tom James of Dallas, Inc.*, 109 S.W.3d at 883. In reaching this conclusion, we need not decide whether the alleged oral agreement

is sufficient to rebut the presumption of at-will employment.

(3) Written and Oral Agreements to Provide Carter with Confidential Information

■ CSCS argues that the Non–Competition Agreement was ancillary to or part of an enforceable agreement (as set forth in the Non–Competition Agreement itself) to provide Carter with confidential information. However, the Non–Competition Agreement merely states that CSCS "may reveal" confidential information in Carter's future employment. On that basis, the trial court could have concluded there was no written, enforceable obligation on CSCS's part to provide confidential information to Carter. Thus, we cannot conclude the trial court abused its discretion in denying CSCS's request for a temporary injunction based on the argument that the Non–Competition Agreement was ancillary to or a part of an otherwise enforceable written agreement requiring it to provide confidential information to Carter. *See Tom James of Dallas, Inc.*, 109 S.W.3d at 883.

■ CSCS also argues it entered into an enforceable oral agreement to provide confidential information to Carter, and that the Non–Competition Agreement was ancillary to or a part of that agreement. The parties dispute whether CSCS agreed to provide any confidential information to Carter at the time the "Non–Competition Agreement" was signed.[3] The only evidence that CSCS agreed to provide confidential information at the time the non-compete agreement was made was testimony that CSCS had customer and supplier databases it was going to supply to Carter and that CSCS had confidential information it was going to make available to Carter on the first day he went to work, and that it did provide confidential information to Carter on his first day of work.

The Non–Competition Agreement provides that Carter will not disclose to others information about CSCS's business methods and procedures. However, absent an *enforceable obligation* on CSCS's part to provide confidential information to Carter, any promise by Carter not to disclose such information would be a unilateral offer, which could only be accepted by CSCS's future performance. *See Light*, 883 S.W.2d at 645 n. 6. If CSCS accepted the offer by providing Carter with the information, a unilateral contract would be formed, "[b]ut such [a] unilateral contract, since it could be accepted only by future performance, could not support a covenant not to compete inasmuch as it was not an 'otherwise enforceable agreement at the time the agreement is made' as required by § 15.50." *Id.; Anderson Chem. Co. v. Green*, 66 S.W.3d 434, 438 (Tex.App.-Amarillo 2001, no pet.) (unilateral promise not to disclose proprietary information cannot support covenant not to compete because it was not otherwise enforceable at the time it was made). Thus, we cannot conclude the trial court abused its discretion in denying CSCS's request for a temporary injunction based on the argument that the Non–Competition Agreement was ancillary to or a part of an enforceable oral agreement to provide Carter with confidential information. *See Tom James of Dallas, Inc.*, 109 S.W.3d at 883.

---

3. In an at-will employment situation, an employer's promise to provide confidential information in exchange for the employee's promise not to disclose that information would be illusory because the obligation could be avoided merely by terminating the employment.

*See Light*, 883 S.W.2d at 644–45; *Strickland*, 97 S.W.3d at 839. In an employment situation only terminable for cause, such a promise to provide information would not be illusory. *See Light*, 883 S.W.2d at 644–45 n. 5.

**(4) Oral Agreement to Provide Specialized Training**

■ CSCS next argues the Non–Competition Agreement was ancillary to or a part of an oral agreement to provide Carter with specialized training. The "Non–Competition Agreement" does not mention an agreement to provide specialized training.[4] However, CSCS's general manager testified that before the agreements were signed, he promised to train Carter in all aspects of the business and that it would take two years to bring him up to speed and make him an asset rather than a liability. He testified that Carter agreed to allow CSCS to train him. For purposes of discussion, we assume without deciding that the alleged oral employment agreement was terminable only for cause, and thus was not illusory.

Nevertheless, the trial court heard conflicting evidence on whether the covenant-not-to-compete was ancillary to it. By its terms, the covenant-not-to-compete was designed to enforce the non-disclosure provision of the Non–Competition Agreement. ("You agree not to disclose to others.... You *further agree* not to work for a competitor...."). The only promise Carter allegedly gave in return for the alleged promise to train at the time the non-compete agreement was made, was to allow CSCS to train him. The Non–Competition Agreement was not designed to enforce this return promise by Carter. Thus, the evidence before the trial court does not indicate that the non-disclosure agreement was given in exchange for the alleged promise to train. As a result, we cannot conclude the trial court abused its discretion in denying CSCS's request for a temporary injunction based on the argument that the Non–Competition Agreement was ancillary to or a part of an oral agreement to provide Carter with specialized training. *See Tom James of Dallas, Inc.,* 109 S.W.3d at 883.

**(5) Summary**

We may not overrule the trial court's decision unless the trial court acted unreasonably or in an arbitrary manner, without reference to guiding rules or principles. *Butnaru,* 84 S.W.3d at 211. The trial court does not abuse its discretion if some evidence reasonably supports the trial court's decision. *Id.* Based on the forgoing discussion, we conclude the trial court did not abuse its discretion in implicitly concluding that CSCS did not show: (1) a cause of action against the defendant for breach of the "Non–Competition Agreement"; or (2) a probable right to the injunctive relief CSCS sought. *See Butnaru,* 84 S.W.3d at 211; *Sun Oil Co. v. Whitaker,* 424 S.W.2d 216, 218 (Tex.1968) (stating that the temporary injunction applicant is not required to establish that it will prevail on final trial and need only plead a cause of action and show a probable right to the relief sought); *Strickland,* 97 S.W.3d at 837. We resolve CSCS's first three issues against it.

**SUFFICIENCY OF EVIDENCE**

■ In its fourth issue, CSCS argues the evidence is legally and factually insufficient to support the trial court's implied findings of fact. This is not the correct standard of review for the denial of a temporary injunction. *See Tom James of Dallas, Inc.,* 109 S.W.3d at 882–83. Further, findings of fact and conclusions of law may be helpful in an interlocutory appeal,

---

**4.** The subsequently executed written employment agreement merely provides that the first month of the agreement would be considered a training period and no compensation would be paid to Carter for that month. Under that agreement, Carter's return promise for the one month of training was to forego compensation for that month.

but they are not required and do not have the same force and effect as findings made after a trial to the court. *See* Tex.R.App. P. 28.1; *Tom James of Dallas, Inc.*, 109 S.W.3d at 884. We resolve CSCS's fourth issue against it.

### Refusal to Hear Evidence

██ CSCS's fifth issue asserts the trial court erred in "refusing" to allow CSCS to present additional testimony at the temporary injunction hearing. However, CSCS never requested to reopen the evidence to present additional evidence, nor did it object to the trial court's ruling on the temporary injunction before CSCS had presented all of its evidence. During its argument in the trial court, CSCS's attorney represented CSCS had additional witnesses who could testify to support the testimony already in the record, but never identified any additional witnesses, or the evidence on other issues CSCS wanted to present to the trial court. On appeal, CSCS does not identify what additional evidence it was prevented from presenting to the trial court. We conclude CSCS failed to preserve any error related to its argument that the trial court refused to allow it to present additional evidence at the temporary injunction hearing. *See* Tex.R.App. P. 33.1. We resolve CSCS's fifth issue against it.

### Conclusion

We affirm the order of the trial court denying the temporary injunction.