Affirmed and Opinion filed December 7, 2004









Affirmed
and Opinion filed December 7, 2004.

 

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-04-00598-CV

____________

 

EMSL ANALYTICAL,
INC.,
Appellant

 

V.

 

DIANE R. YOUNKER, Appellee

 



 

On Appeal from the 333rd
District Court

Harris County, Texas

Trial Court Cause No. 04-25922

 



 

O P I N I O N

EMSL Analytical, Inc. appeals from the
denial of its application for temporary injunction in its lawsuit against Diane
Younker.  EMSL alleges that Younker, its
former employee, violated a covenant not to compete and a nondisclosure
agreement when she went to work for one of its customers.  Because EMSL failed to show that it would
probably suffer imminent and irreparable injury in the absence of a temporary
injunction, we affirm.

 

 








Background

EMSL provides environmental testing
services to its customers.  Younker went
to work for EMSL in 2002 as a Microbiology Laboratory Manager.  Prior to starting employment, EMSL required
Younker to sign a covenant not to compete and nondisclosure agreement.  The operative paragraph of this document reads
as follows:

The Company promises to provide
Employee with some Confidential Information and/or Trade Secrets of the
Company.  Employee agrees not to
disclose, or aid and abet the disclosure to any person of Confidential
Information or Trade Secrets of the Company. 
To enforce Employee’s promise not to disclose such Confidential
Information or Trade Secrets, Employee agrees that during Employee’s employment
with the company and for a period of twelve (12) months after termination of
Employee’s employment, no matter how occasioned (or for a period of twelve (12)
months after the entry of a final judgment of injunction in the event the
Company seeks injunctive enforcement of this covenant), Employee will not,
either for Employee’s own purposes or as an employee of or for the benefit of
any other entity or person, directly or indirectly:

a)       Engage or have any interest in any
activity, venture or environmental laboratory involving asbestos analysis, lead
analysis and environmental microbiology within the states of Texas and
Louisiana;

b)       Work
for any customer of the Company within the states of Texas and Louisiana. . . .

EMSL claims that Younker was subsequently given access
to three types of confidential information: 
(1) a customer information database, (2) a laboratory quality assurance
manual, and (3) a laboratory standard operating procedures manual.








In 2003, EMSL undertook a microbiology
testing project for Lockheed Martin Space Operations.  The project involved the testing of equipment
to be used on the International Space Station. 
Younker supervised the project and reported the results to
Lockheed.  EMSL billed Lockheed $14,750
for the project.  In 2004, Younker
resigned from EMSL and began working for Lockheed at the Johnson Space Center.  Her uncontroverted testimony was that she has
not disclosed EMSL’s confidential information to Lockheed or anyone else.  She further stated that her job
responsibilities were completely different at the two companies: at EMSL, she
provided analytical services on samples, and at Lockheed, she provides
scientific support to engineers relating to both microbiological and
non-microbiological equipment.  She
stated that Lockheed does not have its own microbiological laboratory and that,
although a separate department of NASA does and she has been there to collect
data from the laboratory, she has never given NASA any advice regarding its
laboratory.

EMSL sued Younker, alleging breach of
contract, breach of fiduciary duty, and misappropriation of trade secrets, and
requesting a temporary restraining order and temporary and permanent
injunctions.  The trial court initially
granted a TRO but, after an evidentiary hearing, subsequently denied the
application for a temporary injunction. 
This interlocutory appeal is from the denial of the temporary
injunction.  See Tex. Civ. Prac. & Rem. Code Ann. §
51.014(4) (Vernon Supp. 2004).[1]   In a single issue, EMSL contends that the
trial court abused its discretion in denying the temporary injunction.

Standard of Review








EMSL initially questions whether the
requirements for a temporary injunction involving a covenant not to compete are
governed by traditional common law rules of equity or by the Covenants Not to
Compete Act.  Tex. Bus. & Com. Code Ann. §§ 15.50-15.52 (Vernon 2002); see
also Light v. Central Cellular Co. of Tex., 883 S.W.2d 642, 643-44 (Tex.
1994) (holding the Act preempts the common law relating to enforcement of
covenants not to compete).  We agree with
the First and Ninth Courts of Appeals, in holding that the Act does not preempt
the common law relating to temporary injunctions.  Wright v. Sport Supply Group, Inc.,
137 S.W.3d 289, 293 n.1 (Tex. App.—Beaumont 2004, no pet.); Cardinal Health
Staffing Network, Inc. v. Bowen, 106 S.W.3d 230, 236-240 (Tex. App.—Houston
[1st Dist.] 2003, no pet.) (en banc).[2]  As explained in detail in Cardinal Health,
the clear language of the Act expresses an intention to govern only final
remedies.  106 S.W.3d at 237-39.  By its very nature, a temporary injunction is
not a final remedy.  Accordingly, we look
to the common law rules governing temporary injunctions in determining whether
the court below properly denied the application.

 The
purpose of a temporary injunction is to preserve the status quo of the
litigation’s subject matter pending a trial on the merits.  Butnaru v. Ford Motor Co., 84 S.W.3d
198, 204 (Tex. 2002).  To obtain a
temporary injunction, the applicant must plead and prove: (1) a cause of action
against the defendant, (2) a probable right to the relief sought, and (3) a
probable, imminent, and irreparable injury in the interim.  Id. 
The decision to grant or deny a temporary injunction rests within the
trial court’s sound discretion.  Id.  A reviewing court should not reverse an order
on a temporary injunction unless the trial court’s action was so arbitrary that
it exceeded the bounds of reasonable discretion.  Id. 
When a consideration of the evidence is required, we view it in the
light most favorable to the trial court’s order, indulging every reasonable
inference in its favor.  Amalgamated
Acme Affiliates, Inc. v. Minton, 33 S.W.3d 387, 392 (Tex. App.—Austin 2000,
no pet.).  When, as here, the trial court
does not make findings of fact or conclusions of law, we must uphold the
court’s order on any legal theory supported by the record.  Universal Health Servs., Inc. v. Thompson,
24 S.W.3d 570, 577 (Tex. App.—Austin 2000, no pet.).

 








Analysis

We focus our attention on the third
required element: that the applicant prove a probable, imminent, and
irreparable injury in the interim.  See
Butnaru, 84 S.W.3d at 204.  EMSL
appears to identify two possible reasons for needing a temporary injunction:
(1) to prevent the possible release of their confidential information and (2)
to preserve the possibility that Lockheed might need EMSL’s services in the
future.

We begin by noting that this is not the
typical covenant not to compete case where a former employer goes to work for a
competitor and tries to take customers away. 
See, e.g., Wright, 137 S.W.3d at 293 (holding probable injury was
shown where former employee acknowledged selling products to former employer’s
customers).  While there was evidence
that Younker was violating the noncompete clause by working for a former
customer of EMSL’s, the agreement itself states that the sole purpose of the
noncompete clause was to enforce the nondisclosure clause.[3]  However, there was no evidence offered to
show that Younker was currently violating the nondisclosure clause or that
there was any likelihood that she would in the future.[4]








Jason Dobranic, EMSL’s regional manager,
testified that he had no knowledge of Younker disclosing any confidential
information or of whether she worked in a microbiology lab for Lockheed.  He further admitted that he had no knowledge
of what Lockheed might ask Younker to do, but that there was a “potential” that
Lockheed could ask her to do things that would involve EMSL’s confidential
information.  He said that he was
“concerned” that EMSL could suffer irreparable harm if Younker was not
prevented from working for Lockheed during the pendency of the lawsuit, and he
could “envision” a situation in which Younker might confer some of EMSL’s
confidential information to a laboratory at NASA.  He also stated that EMSL’s project for
Lockheed was a one-time assignment but that there was a “potential” for future
special projects.

Younker testified that she did not take
any confidential information with her when she left EMSL and that she has not
disclosed EMSL’s confidential information to Lockheed, NASA, or anyone
else.  She further stated that her job
responsibilities were different at the two companies and that she does not work
in a microbiology lab for Lockheed.  It
was undisputed that Lockheed is not a competitor of EMSL.[5]








Based on the evidence presented, EMSL
established a theoretical possibility that Younker could take Lockheed away as
a customer by doing in-house for them what they had on one occasion paid EMSL
to do.  However, there is no evidence
showing that she is doing such work for Lockheed or has, will, or ever would do
such work for Lockheed.  EMSL also
established a theoretical possibility that Younker could divulge EMSL’s
confidential information to Lockheed or some other entity, but again, there is
no evidence that she has done this or likely will do this.  Indeed, Younker’s uncontroverted testimony
refuted both of EMSL’s theoretical reasons for needing a temporary injunction.  Further, the evidence supports the conclusion
that her job responsibilities at Lockheed would not require her to use EMSL’s
confidential information.  See
Cardinal Health, 106 S.W.3d at 242-43 (holding party failed to demonstrate
probable injury from violation of noncompete clause and possible violation of
nondisclosure clause where former employee did not need to use former
employer’s confidential information in new job); cf. Rugen v. Interactive
Bus. Sys., Inc., 864 S.W.2d 548, 552 (Tex. App.—Dallas 1993, no
writ) (finding temporary injunction was proper where defendant held
confidential information of plaintiff and was in direct competition with
plaintiff).  At most, the testimony of
EMSL’s regional manager established only a fear of possible injury, and that
contingency is not sufficient to support issuance of a temporary
injunction.  See Frey v. DeCordova
Bend Estates Owners Ass’n, 647 S.W.2d 246, 248 (Tex. 1983); Harbor
Perfusion, Inc. v. Floyd, 45 S.W.3d 713, 716 (Tex. App.—Corpus Christi
2001, no pet.).[6]

Viewing the evidence in the light most
favorable to the trial court’s order, we hold that EMSL has failed to establish
that it faced “probable, imminent, and irreparable injury” in the absence of a
temporary injunction.  See Butnaru,
84 S.W.3d at 204.  Consequently, the
trial court did not abuse its discretion in denying the application for
temporary injunction.  EMSL’s sole issue
is overruled.

The trial court’s judgment is affirmed.

 

 

/s/      Adele Hedges

Chief Justice

 

Judgment
rendered and Opinion filed December 7, 2004.

Panel
consists of Chief Justice Hedges and Justices Fowler and Seymore.











[1]  Younker
suggests that the trial court actually denied both temporary and permanent
injunctions.  Indeed, the court’s order
states “came to be heard [EMSL’s] Application for Temporary and Permanent
Injunction. . . . [T]he court is of the opinion that said Application shall be
denied.”  (emphasis omitted).  However, the record is clear that the court
included the word “Permanent” in this order solely because that word was in the
title of EMSL’s pleading.  In granting an
initial temporary restraining order (based on the same pleading), the court
simultaneously set a hearing on the temporary injunction.  The court opened that hearing by stating
“[w]e’re here today on a request for a temporary injunction,” and at the close
of the hearing, he stated “[t]he motion for Temporary Injunction is
denied.”  The court’s docket sheet also
reflects only that it denied the temporary injunction.  We further note that it would generally be
improper for a trial court to rule on a permanent injunction prior to trial on
the merits.  State v. Gibson’s
Distrib. Co., 436 S.W.2d 122, 124 (Tex. 1968).





[2]  In one
opinion, the Fifth Court of Appeals appeared to hold the opposite, that the Act
does govern temporary as well as permanent injunctions.  Hilb, Rogal & Hamilton Co. of Tex. v.
Wurzman, 861 S.W.2d 30, 33-35 (Tex. App.—Dallas 1993, no writ) (stating
that the Act supercedes equitable temporary injunction requirements but holding
that appellant waived application of the statute by failing to raise it in the
trial court).  However, in a subsequent
opinion, the Fifth Court cited Cardinal Health and expressly reserved
the question of whether the Act superceded the equitable rules governing
temporary injunctions.  CSCS, Inc. v.
Carter, 129 S.W.3d 584, 588 n.1 (Tex. App.—Dallas 2003, no pet.).





[3]  We take no
position at this juncture on whether a valid injunction could issue to prevent
a former employee from working for a former customer.





[4]  Although not specifically raised by
EMSL, it has been held that when a request for temporary injunction relates to
a covenant not to compete, proof of a continuing breach of the covenant by a
highly trained employee gives rise to a presumption of probable injury.  See Unitel Corp. v. Decker, 731 S.W.2d
636, 641 (Tex. App.—Houston [14th Dist.] 1987, no writ).  However, this presumption is certainly a
rebuttable one.  Cardinal Health,
106 S.W.3d at 236.  To the extent this
presumption applies to this case, we find that the offered evidence rebutted
it.

 





[5]  EMSL states
several times in its briefing that Younker admitted that she is currently using
knowledge she gained as a result of EMSL’s procedures and methodologies.  However, her testimony is very clear that
although she uses knowledge she obtained while working for EMSL, she does not
use any confidential information that she became privy to while at EMSL.





[6]  The cases EMSL
primarily relies upon are easily distinguishable.  EMSL contends that under State v. Texas
Pet Foods, Inc., 591 S.W.2d 800, 804 (Tex. 1979), the mere fact that
Younker continues to work for Lockheed is sufficient to mandate a temporary
injunction.  Texas Pet Foods involved a
permanent injunction specifically authorized under the Texas Clean Air, Water
Quality, and Renderers’ Licensing Acts against continuing violations of those
acts.  Id. at 802-03.  The court held that over a year’s worth of
continuing, daily violations was sufficient to show a present or threatened
violation as required by the acts for an injunction to issue.  Id. at 803-05.  In the case before us, EMSL does not claim
that Younker’s violation of the noncompete clause will probably cause it harm;
EMSL instead claims only that the potential violation of the nondisclosure
clause will probably cause it harm. 
Thus, Younker’s alleged continued violation of the noncompete clause
alone cannot justify a temporary injunction.

EMSL further argues that in order to
demonstrate harm under Universal Health, 24 S.W.3d 570, it needs only to
show that an award of damages would be inadequate compensation.  While such proof may be sufficient to show
that the possible harm was irreparable, nothing in Universal Health relieves
an applicant of the burden of showing probable and imminent
harm.  Id. at 577-78.  Indeed, in that case, the defendants,
investors in a hospital, had decided to shut the hospital down, and the
plaintiffs, doctors at the hospital, showed that shutdown of the hospital would
probably cause them imminent and irreparable injury; thus, the temporary
injunction was properly granted.  Id. at
574, 578.