**Dan WRIGHT and Riddell, Inc., Appellants,**

v.

**SPORT SUPPLY GROUP, INC., Appellee.**

No. 09–03–538 CV.

Court of Appeals of Texas, Beaumont.

Submitted Feb. 16, 2004.

Decided April 29, 2004.

Scott R. McLaughlin, Michael E. Coles, Jarrett R. Andrew, Greg C. Dillard, Winstead Sechrest & Minick PC, The Woodlands, for appellants.

Ann Marie Painter, Paulo B. Mckeeby, Harvey G. Joseph, Littler Mendelson, PC, Dallas, for appellee.

Before McKEITHEN, C.J., BURGESS and GAULTNEY, JJ.

## OPINION

DON BURGESS, Justice.

Appellants, Dan Wright and Riddell, Inc., ask this court to dissolve a temporary injunction entered against them at the request of Sport Supply Group, Inc. ("SSG"). Wright, a former SSG sports equipment salesman, now sells sports equipment for Riddell. The trial court found Wright's employment with Riddell violates a confidentiality and noncompetition agreement between Wright and SSG. The trial court's order restrains Wright and Riddell, in conjunction with Wright, from performing "sales related services or activities" for business in competition with SSG for "institutional customers" and from doing business with, soliciting or contacting any

SSG "customer or ex-customer" in twenty-nine Texas counties. Wright and Riddell bring six issues. Concluding the trial court abused its discretion in granting the temporary injunction, we reverse the trial court's order.

Wright began his employment with SSG as an outside salesperson in 1995. Wright sold SSG's sporting goods to various youth leagues and similar institutional customers in Harris County, as well as other counties in Southeast Texas. In November, 2001, Wright signed the Non–Competition and Confidentiality Agreement ("Agreement") that SSG seeks to enforce through the underlying lawsuit. In July 2003, Wright resigned from SSG and began working for Riddell soon after.

Wright now works for Riddell in essentially the same geographical territory as he did for SSG. Wright's customer base for Riddell includes entities such as youth leagues, high schools, park and recreation associations, YMCAs, boys' and girls' clubs and church leagues—the same categories of customers he called on for SSG. While with Riddell, Wright has sold products to the Salvation Army, Magnolia Youth Football, Spring Branch Memorial Sports Association, Willis Youth Athletic Association and The Houston Gunners—all customers Wright serviced on behalf of SSG.

Wright's office telephone line is a second telephone number based in his home. The telephone number he uses now for Riddell is the same number he used while working for SSG. The number was on his SSG business cards and now is on his Riddell business cards. Since Wright left SSG, a representative of at least one of his SSG customers, the Spring Branch Memorial Sports Association, has called Wright on his business telephone. After informing the representative that he now worked for Riddell, Wright sold sporting goods to the representative on behalf of Riddell.

We review a trial court's grant or denial of injunctive relief by an abuse of discretion standard. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex.2002). We should reverse an order granting injunctive relief only if the trial court abused its discretion and we must not substitute our judgment for that of the trial court unless the trial court's action was so arbitrary that it exceeded the bounds of reasonable discretion. *Id.*

While a temporary injunction's purpose is to preserve the status quo of the litigation's subject matter pending a trial on the merits, it also is an extraordinary remedy that does not issue as a matter of right. *Id.* To obtain a temporary injunction, an applicant must plead and prove three specific elements (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury before trial. *Id.* "An injury is irreparable if the injured party cannot be adequately compensated in damages or if the damages cannot be measured by any certain pecuniary standard." *Id.*

We view the evidence in the light most favorable to the trial court's order, indulging every reasonable inference in its favor, and determine whether the order was so arbitrary as to exceed the bounds of reasonable discretion. *NMTC Corp. v. Conarroe*, 99 S.W.3d 865, 868 (Tex.App.-Beaumont 2003, no pet.). The trial court does not abuse its discretion when basing its decision on conflicting evidence, nor does it abuse its discretion so long as some evidence of substantive and probative character exists to support its decision. *See Davis v. Huey*, 571 S.W.2d 859, 862 (Tex.1978); *see Brosseau v. Ranzau*, 81 S.W.3d 381, 400 (Tex. App.-Beaumont 2002, pet. denied).

■ In issues one and two,[1] appellants attack SSG's proof of the third *Butnaru* element: probable, imminent, and irreparable injury before trial. Maintaining SSG offered no evidence of probable injury, appellants complain in issue one that SSG failed to present any evidence it has no adequate remedy at law. Issue two contends SSG failed to present any evidence it would suffer irreparable injury. The record clearly shows probable and imminent injury. Wright admitted he was selling Riddell sporting goods to former SSG customers in his old SSG territory. Thus, "[t]he harm was more than imminent; it was actual and ongoing." *Conarroe*, 99 S.W.3d at 869.

Appellants argue SSG neither offered evidence that monetary damages would be an insufficient remedy, nor that either Wright or Riddell is unable to satisfy a judgment for damages sustained by SSG prior to completion of a full trial on the merits.

SSG maintains evidence of inadequate remedy of law is found in both the testimony of Wright regarding his sales to SSG's customers, as well as that of Robert Coffman, SSG's director of business development. Robert Coffman testified as follows:

Q. Shifting gears in the interest of time, Mr. Coffman, what's the impact on the company of Mr. Wright's departure from the Houston territory and his employment for Riddell?

A. It's really hard to quantify that because the relationship that Mr. Wright has in the territory I couldn't really give you a specific number that could actually tell you how much it would impact us.

Q. How, why not?

A. Basically, it's all relationship driven. If you have your customer lists, I don't know if they are going to buy next year or ten years from now. I just couldn't tell you.

Based on this testimony, SSG maintains the trial court could have determined that SSG's damages were difficult to calculate. We agree. *See Universal Health Serv., Inc. v. Thompson*, 24 S.W.3d 570, 578 (Tex. App.-Austin 2000, no pet.); *see also Miller Paper Co. v. Roberts Paper Co.*, 901 S.W.2d 593, 597 (Tex.App.-Amarillo 1995, no pet.).

■ In addition, the Agreement between Wright and SSG provides that remedies at law for any breach or attempted breach of the Agreement are inadequate and each of the parties is entitled to "injunctive and other equitable relief." The parties also agreed not to use as a defense

---

1. In response to issues one and two, SSG asks us to reconsider *NMTC Corp. v. Conarroe*, 99 S.W.3d 865 (Tex.App.-Beaumont 2003, no pet.). In *Conarroe*, we concluded the trial judge did not err in applying the common law prerequisites to the denial of a request for temporary injunction in a case involving a covenant not to compete. *Id.* at 868. SSG maintains that section 15.52 of the Texas Business and Commerce Code preempts common law injunction standards. Thus, when seeking an injunction based on violations of a covenant not to compete enforceable under section 15.50, an applicant, SSG argues, need show only that a defendant has violated such a covenant, but is not required also to show irreparable harm and inadequacy of legal remedy.

We decline to revisit our *Conarroe* decision and further note another of our sister courts has ruled similarly. *See Cardinal Health Staffing Network, Inc. v. Bowen*, 106 S.W.3d 230, 241 (Tex.App.-Houston [1st Dist.] 2003, no pet.). In *Bowen*, the First Court held equitable temporary-injunction rules have not been preempted, thereby overruling its earlier decision in *Norlyn Enterprises, Inc. v. APDP, Inc.*, 95 S.W.3d 578 (Tex.App.-Houston [1st Dist.] 2002, no pet.). *Id.*

that either party has an adequate remedy at law. While we are unaware of any Texas case holding that such agreements alone establish, for injunction purposes, that remedies at law will be inadequate, the Texas Supreme Court long has recognized "a strong public policy in favor of preserving the freedom of contract." *Lawrence v. CDB Serv., Inc.,* 44 S.W.3d 544, 553 (Tex.2001). Absent a statute or fundamental public policy precluding waiver, one generally may contractually waive even constitutional or statutory rights, whether present or future. *See Williams v. Williams,* 569 S.W.2d 867, 869–70 (Tex.1978)(surviving spouse could contractually waive statutory and constitutional homestead rights); *Dillee v. Sisters of Charity of Incarnate Word Health Care Sys., Houston, Tex.,* 912 S.W.2d 307, 308–09, 311 (Tex.App.-Houston [14th Dist.] 1995, no writ)(employee could contractually waive contract and constitutional right to due process and hearing upon termination of employment if done so voluntarily, intelligently, and knowingly). Thus, some substantive and probative evidence exists to support the trial court's order. When we view the evidence "in the light most favorable to the order, and indulge all reasonable inferences in favor of the decision," we cannot say the order was so arbitrary as to exceed the bounds of reasonable discretion. *Conarroe,* 99 S.W.3d at 868. Therefore, we find the trial court did not abuse its discretion in determining SSG has no adequate remedy at law and SSG's damages are not presently ascertainable or readily subject to calculation. Issue one is overruled.

▮ Issues one (no evidence of inadequate remedy at law) and two (no evidence of irreparable injury) are intertwined under Texas case law. One way to establish *irreparable injury is to show the damages* "cannot be measured by any certain pecuniary standard," *see Butnaru,* 84 S.W.3d at 204, or in other words, to establish there is no "adequate remedy at law for damages." *Cardinal Health Staffing Network, Inc. v. Bowen* 106 S.W.3d 230, 235 (Tex.App.-Houston [1st Dist.] 2003, no pet.). As the trial court, without abuse of discretion, determined SSG's damages were not presently ascertainable or readily subject to calculation, it follows that SSG's injury likewise is irreparable. *See Butnaru,* 84 S.W.3d at 204.

Moreover, SSG maintains that an employee's breach of a noncompetition covenant creates a rebuttable presumption that the applicant will suffer irreparable injury. SSG relies on *Beasley v. Hub City Tex., L.P.,* 2003 WL 22254692 at *7–8 (Tex. App.-Houston [1st Dist.] Sept. 29, 2003, no pet.) (not designated for publication); *Unitel Corp. v. Decker,* 731 S.W.2d 636, 641 (Tex.App.-Houston [14th Dist.] 1987, no writ) (proof of continued breach of noncompete agreement by highly trained employee constitutes prima facie proof of probable injury.); and *Hartwell's Office World, Inc. v. Systex Corp.,* 598 S.W.2d 636, 639 (Tex.Civ.App.-Houston [14th Dist.] 1980, writ ref'd n.r.e.). Here, appellants neither rebut the presumption, nor explain why they have no duty to do so. Issue two is overruled.

▮ In issue three, appellants assert that because the covenant not to compete is unsupported by valid consideration, the trial court abused its discretion by enforcing the covenant. Appellants maintain SSG provided evidence only of "promises" and "past consideration," and neither is sufficient to support the covenant.

▮ Whether a covenant not to compete is enforceable is a question of law. *Light v. Centel Cellular Co. of Tex.,* 883 S.W.2d 642, 644 (Tex.1994). A covenant not to compete is enforceable if it (1) is ancillary to or part of an otherwise en-

forceable agreement at the time the agreement is made and (2) contains limitations as to time, geographical area, and scope of activity to be restrained that are reasonable and do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee. *See* TEX. BUS. & COM.CODE ANN. § 15.50(a) (Vernon 2002).

■■■■ Of course, an "otherwise enforceable agreement" is a contract and, as such, must be supported by consideration. *Tom James of Dallas, Inc. v. Cobb,* 109 S.W.3d 877, 885 (Tex.App.-Dallas 2003, no pet.). An at-will employment relationship,[2] by itself, does not constitute an otherwise enforceable agreement because it is not binding on either the employee or the employer. *Martin v. Credit Protection Ass'n, Inc.,* 793 S.W.2d 667, 670 (Tex.1990). However, an otherwise enforceable agreement may arise from an at-will employment relationship so long as independent consideration is given in exchange for a promise and is not illusory. *See Light,* 883 S.W.2d at 645–46.

In relevant parts of the Agreement here, Wright promised, for twelve months after ceasing to be an employee, he would not:

(a) conduct or assist others in conducting any sales related activities for a business related to the promotion, marketing, distribution, manufacturing, sourcing, importing and/or sale of sports related equipment and/or supplies to institutional customers (including, for example, schools, government agencies, athletic clubs, youth sport leagues, and recreational organizations, . . . .)

(b) call on, solicit, take away, or accept the business of, or attempt to call on, solicit, take away, or accept the business of any of SSG's customers or clients that

conduct business with SSG in Wright's sales region; or

(c) induce, attempt to induce any customer or client to discontinue its relationship with SSG or its affiliates; or

(d) recruit, hire, assist others in recruiting or hiring any SSG employee or person who was an SSG employee during the preceding twelve (12) month period. Wright also agreed he would not during or after his employment with SSG (i) disclose confidential information to any person or entity other than in connection with his employment with SSG in accordance with SSG's policies or (ii) make use of any confidential information for his own purposes or for the benefit of any other person or entity, other than SSG.

In exchange for Wright's nondisclosure and noncompetition promises, SSG agreed to provide Wright with: (1) portable laptop computers, and equipment necessary to use them, including modems and instruction manuals; (2) on-line and unrestricted access to SSG's confidential and proprietary databases: customer, inventory, supplier, distributor, vendor, order, accounts receivable, accounts payable, product, cost and pricing; and (3) specialized training, developed at company expense and by SSG uniquely for use with SSG's outside sales force, regarding methods and techniques for using and interpreting the information on the databases.

The record here shows (1) Wright had received the computer before signing the Agreement; (2) he received training the year before he signed the agreement and the year after the execution of the agreement; and (3) Wright received confidential information regarding sales, customers' purchasing history and price lists before and after signing the Agreement. SSG does not argue that it provided any consid-

---

2. That Wright was an at-will employee of SSG     is undisputed.

eration to Wright contemporaneously with the Agreement's execution.

According to Wright, because all of SSG's promises are illusory, they are insufficient to support the Agreement's noncompetition clauses; therefore, Wright asserts, SSG has failed to demonstrate a probable right to relief. Citing *CRC–Evans Pipeline Intern., Inc. v. Myers*, 927 S.W.2d 259, 263 (Tex.App.-Houston [1st Dist] 1996, no writ), Wright contends that the precise time that is critical to determining whether a covenant is ancillary to or part of an otherwise enforceable agreement *"is the moment the agreement is made." Id.*, (citing *Light*, 883 S.W.2d at 644–45) (emphasis in original). Wright further asserts Texas contract law, generally, and the *Light* decision, specifically, require a contemporaneous exchange of consideration in order for a contract to be "otherwise enforceable," and, thus, one that could contain an enforceable noncompete covenant.[3]

Several of our sister courts generally agree the time when an agreement is made is the relevant time for determining whether the agreement is otherwise enforceable. In *Strickland v. Medtronic, Inc.*, the Dallas court recently reversed a trial court's order granting temporary injunction. *See Strickland v. Medtronic, Inc.*, 97 S.W.3d 835, 839 (Tex.App.-Dallas 2003, pet. dism'd w.o.j.). The *Strickland* Court did not agree that contract obligated the employer to provide confidential information to the employee, but instead stated:

> However, even assuming that by this provision Medtronic impliedly promised to provide confidential information to

Strickland, we conclude such a promise is illusory because it necessarily depends on a period of employment. Medtronic could avoid this obligation by simply firing Strickland on the day the employment agreement was executed. Medtronic also argues the fact that Medtronic provided "immediate training" to Strickland in consideration for her execution of the employee agreement is an additional basis supporting the existence of an otherwise enforceable agreement. We disagree. At best, the record indicates that Medtronic sent Strickland some "pre-study materials" prior to the execution of the employment agreement and gave her training during the initial months of her employment. *The relevant inquiry under section 15.50, however, is whether, at the time the agreement is made, there exists a binding promise to train. See Light,* 883 S.W.2d at 644–45. No such promise exists in this case.

*Id.* (emphasis added).

Other courts also have emphasized that the time the agreement is made is the relevant time to determine whether nonillusory promises exist. *See Alex Sheshunoff Mgmt. Servs. L.P. v. Johnson,* 124 S.W.3d 678, 686 (Tex.App.-Austin 2003, pet. filed) (that employer "gave new confidential information and training to [employee] some time after entering into the agreement will not suffice; we must evaluate the consideration given at the time the agreement was made."); *Anderson Chemical Co., Inc. v. Green,* 66 S.W.3d 434, 438 (Tex.App.-Amarillo 2001, no pet.) (emphasis in original) (promise not to disclose proprietary information "which is later ac-

---

**3.** Emphasizing footnote 14 in *Light* and its use of present tense, Wright argues that *Light* requires a contemporaneous exchange of consideration. Footnote 14 states: "Thus if an employer *gives* an employee confidential and proprietary information or trade secrets *in*

*exchange* for the employee's promise not to disclose them, and the parties enter into a covenant not to compete, the covenant is ancillary to an otherwise enforceable agreement...." *Light,* 883 S.W.2d at 647 n. 14 (emphasis added by appellants).

cepted by the employer's performance in providing that information to the employee is a unilateral contract that cannot support a covenant not to compete because it is not otherwise enforceable **at the time it is made.**").

On the other hand, SSG maintains the Agreement is an "otherwise enforceable" one because SSG was contractually obligated to provide confidential information and training to Wright and further contends there is no requirement that the employer provide consideration contemporaneously with the execution of the contract. Several cases support SSG's argument. *See Guy Carpenter & Co. Inc. v. Provenzale,* 334 F.3d 459, 466 (5th Cir. 2003) (declining to adopt the construction of the "ancillary to or part of" test that would require the exchange of trade secrets itself to be the "otherwise enforceable agreement" and that would require the promise to provide trade secrets itself to be the nonillusory consideration. "To hold otherwise would pin the enforceability of non-solicitation agreements on whether an employer discloses confidential information at the time the employee signs an employment contract. This is not what *Light,* or [TEX. BUS. & COM.CODE ANN.] § 15.50, intends or requires."); *Curtis v. Ziff Energy Group, Ltd.,* 12 S.W.3d 114, 118 (Tex.App.-Houston [14th Dist.] 1999, no pet.) (found a nonillusory promise where employer promised to provide confidential information and trade secrets to prospective employee and, in return, prospective employee promised not to disclose or use the trade secrets until after his employment.); *Ireland v. Franklin,* 950 S.W.2d 155, 158 (Tex.App.-San Antonio 1997, no writ) (employer's consideration

was its promise to share trade secrets; employee's consideration was her promise not to disclose or use the trade secrets during or after her employment; the non-compete covenant is ancillary to the trade secret clause because employer's consideration gives rise to its interest in restraining employee from competing, and the covenant not to compete is designed to enforce employee's consideration not to disclose or use the trade secrets.[4]).

Here, the consideration provided by SSG is the sort *Light* deemed permissible as explained in *Ireland. See Light,* 883 S.W.2d at 647 n. 14; *Ireland,* 950 S.W.2d at 158. Subsequent to signing the agreement, SSG, on a daily basis, made confidential information available to Wright. Wright himself testified that he regularly accessed SSG's computer programs related to sales and customer information, and, in fact "logged on" almost every night. He continued to have access to the program, which was continually updated as new orders were received, after he signed the Agreement. Wright also acknowledged he received training at SSG's national sales conferences and that he attended the 2002 conference after executing the Agreement. The Agreement obligated SSG to provide confidential information and training and the record establishes it did so. Therefore, we find there was adequate consideration to support the covenant not to compete. Issue three is overruled.

■ Issue four argues that the Agreement's noncompete covenant is unreasonable as a matter of law. We agree.

---

4. The *Ireland* Court stated: "This is the situation blueprinted by the Texas Supreme Court. *See Light,* 883 S.W.2d at 647 n. 14 (explaining that if employer gave confidential information or trade secrets in exchange for employee's promise not to disclose them, then covenant not to compete would be ancillary to otherwise enforceable agreement)." *Ireland,* 950 S.W.2d at 158.

Covenants not to compete are restraints of trade, and unenforceable as a matter of public policy unless they are reasonable restraints. *See John R. Ray & Sons, Inc. v. Stroman,* 923 S.W.2d 80, 85 (Tex.App.-Houston [14th Dist.] 1996, writ denied); *see* TEX. BUS. & COM.CODE ANN. § 15.50(a) (Vernon 2002). A restrictive covenant is unreasonable unless it bears some relation to the activities of the employee. *See Peat Marwick Main & Co. v. Haass,* 818 S.W.2d 381, 386–87 (Tex.1991). A covenant not to compete that contains an industry-wide exclusion from subsequent employment is unenforceable. *See Stroman,* 923 S.W.2d at 85 (citing *Haass,* 818 S.W.2d at 386–88). Further, a covenant not to compete that extends to clients with whom a salesman had no dealings during his employment is unenforceable. *Id.* (citing *Haass,* 818 S.W.2d at 386–88; *Daytona Group of Tex., Inc. v. Smith,* 800 S.W.2d 285, 288 (Tex.App.-Corpus Christi 1990, writ denied)); *see also Hargrave v. Giuffre,* 1999 WL 1270783 at *1 (Tex.App.-Beaumont December 30, 1999, no pet.) (not designated for publication) (covenant not to compete not enforceable where it was "not limited to those clients whom [Defendant] serviced or had dealings with while at the agency.").

Here, the Agreement prohibits Wright from, either directly or indirectly, conducting any sales related activities for a business related to the promotion, marketing, distribution, manufacturing, sourcing, importing and/or sale of sports related equipment and/or supplies to institutional customers in certain counties. The Agreement further prohibits Wright from doing business with the "customers, suppliers, clients, licensors, licensees, distributors, dealers, or independent salespersons of SSG or any its affiliates" that conduct business in Wright's sales district. These covenants do not limit the prohibitions just to customers with whom Wright had dealings while he was employed by SSG.[5] Thus, the covenants are over broad and are unreasonable restraints of trade.[6] *See Stroman,* 923 S.W.2d at 85. Consequently, the trial court abused its discretion by granting the temporary injunction. Issue four is sustained. Our disposition of this issue makes it unnecessary to address Wright's remaining arguments.

We must now determine whether to reform the agreement and injunction or remand this cause to the trial court.

Instead of invalidating covenants not to compete, Texas courts usually have reformed them by revising the unenforceable provisions to those that would be reasonable under the circumstances. *See Butler v. Arrow Mirror & Glass, Inc.,* 51 S.W.3d 787, 794 (Tex. App.-Houston [1st Dist.] 2001, no pet.). While Appellants maintain we should reverse without re-

---

**5.** We have located no Texas Supreme case defining "dealings" in relation to covenants not to compete. For purposes of this case, those SSG customers with whom Wright had "dealings" shall mean any customers he called on and any customers within his territory whose purchases were used to determine his compensation, regardless of whether he made the initial sales contact.

**6.** The trial court may have intended to restrict the unreasonable nature of the covenants with the temporary injunction, which only restricts Wright from doing business with the persons or entities listed in Exhibit 8. Assuming, without deciding, that the trial court did so intend, the injunction does not resolve the problem. While Exhibit 8 lists all of the customers in Dan Wright's district, it identifies them for the "calendar period from 2003/01 to 2003/10." Wright, however, resigned on July 31, 2003—several months before the end of the document's calendar period. Thus, what is not clear is whether Exhibit 8 contains only the customers with whom Dan Wright had dealings or whether it also lists new customers obtained since Wright left.

forming the injunction since SSG did not request reformation, no request is required under section 15.51 of the Texas Business and Commerce Code. TEX. BUS. & COM.CODE ANN. § 15.51(c) (Vernon 2002). Instead, section 15.51(c) requires the court to reform a covenant that it finds unreasonable as to time, geographical area, or scope of activity.[7] Moreover, our rules of appellate procedure generally require us to render the judgment the trial court should have rendered. *See* TEX.R.APP. P. 43.3. An exception, however, exists when remand is necessary for further proceedings. *Id.* at (a).

Because here the record is unclear who Wright's customers were when he worked for SSG, further proceedings are required. Therefore, we reverse the trial court's order granting temporary injunctive relief and thereby dissolve the temporary injunction; we also remand the cause to the trial court for further proceedings consistent with this opinion.

**7.** Before its amendment in 1993, section 15.51 permitted the trial court to reform unreasonable limits within noncompete covenants only at the request of the promisee. *See Gomez v. Zamora*, 814 S.W.2d 114, 119 (Tex. App.-Corpus Christi 1991, no writ).