In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-13-00299-CV
_____

**CHAD DICKERSON, Appellant**

**V.**

**ACADIAN CYPRESS & HARDWOODS, INC., Appellee**

**On Appeal from the 128th District Court**
**Orange County, Texas**
**Trial Cause No. A-130124-C**

**MEMORANDUM OPINION**

Chad Dickerson asks that we dissolve a temporary injunction which, among other restrictions, prohibits him from working for direct competitors of his former employer and from competing with it for certain sales. We conclude the trial court did not abuse its discretion in granting a temporary injunction to preserve the status quo; nevertheless, because the restrictions placed on Dickerson by the trial court's

1

temporary injunction order[1] are not sufficiently specific to comply with the requirements of Rule 683 of the Texas Rules of Civil Procedure, the order must be dissolved. *See* Tex. R. Civ. P. 683. We further conclude that a remand is necessary to allow the trial court to refine its order so that it complies with Rule 683. *See* Tex. R. App. P. 43.3(a).

Background

Acadian sells hardwood lumber and related products to professional woodworkers in the cabinet and millwork industries. In early 2012, Acadian hired Dickerson as an outside sales representative to work with its customers in the Houston market and to expand Acadian's customer base. Before working for

---

[1]The trial court originally signed its temporary injunction order on June 17, 2013. Subsequently, on October 14, 2013, the trial court modified its order, adding a trial setting in March 2014. The restrictions placed on Dickerson by the modified temporary injunction order are the same as those contained in the trial court's original order, and the trial court made no new findings and did not grant any additional relief. *See* Tex. R. App. P. 29.5 (providing that a trial court retains jurisdiction over interlocutory orders while an appeal is pending). Accordingly, we treat Dickerson's notice of appeal as an appeal from the October 14, 2013 modified temporary injunction order; thus, Dickerson's nineteenth issue, which complains that the trial court failed to specify a trial setting, is now moot. *See* Tex. R. App. P. 27.3 (authorizing appellate courts to treat an appeal from the original order as an appeal from the modified order); *Tex. Health and Human Servs. Comm'n v. Advocates for Patient Access, Inc.*, 399 S.W.3d 615, 622-25 (Tex. App.—Austin 2013, no pet.); *see also* Tex. R. Civ. P. 683 (requiring temporary injunction orders to include an order setting the cause for trial on the merits).

Acadian, Dickerson worked in the general construction industry; however, he had not previously sold hardwood or cypress lumber products.

Dickerson signed an employment offer letter in February 2012. Approximately two weeks later, he and an Acadian representative signed a "Non-Competition/Non-Solicitation Agreement." Generally, the agreement contains a two-year term and provides that Dickerson, after leaving Acadian's workforce, is prohibited from competing with Acadian in a defined sales coverage area that generally includes Harris County, Orange County, and surrounding counties. The agreement also prohibits Dickerson from competing with Acadian by providing products or services to Acadian's present and former clients.

Acadian's Director of Sales, John Lyons, hired Dickerson and then trained him about selling the products carried by Acadian. While Dickerson worked for Acadian, a period of thirteen months, Lyons personally introduced Dickerson to many of Acadian's clients and gave him detailed information about them. Also, during his employment, Acadian provided Dickerson with weekly reports and lists, which were sent by electronic mail to Dickerson's Acadian e-mail address. In carrying out his duties for Acadian, Dickerson utilized a mobile device that Acadian provided to him.

In March 2013, Dickerson notified Lyons that he was resigning. When Dickerson resigned, he did not immediately return the mobile device that he used in his job. About a week after Dickerson resigned, when Acadian received Dickerson's mobile device, Acadian discovered that several emails containing confidential information concerning Acadian's client lists and sales history had been forwarded from Dickerson's mobile device to Dickerson's personal email address. During the hearing on the temporary injunction, Dickerson admitted that no one else had access to the mobile device while he had it.

A few weeks after he resigned, Dickerson went to work in Houston as a sales representative selling lumber supplies for Cedar Creek, a company that Acadian contends is one of its competitors. At the time of the temporary-injunction hearing, Dickerson had worked for Cedar Creek for three months. During the period he had worked for Cedar Creek, Dickerson acknowledged that he either sold products or solicited sales from eleven persons or entities that he knew were Acadian's customers. Dickerson identified domestic and imported hardwoods and plywood as the competing products that he was selling for Cedar Creek. During the same hearing, Lyons testified that Acadian had lost sales to Dickerson's new employer.

Following the temporary injunction hearing, the trial court rendered an order granting Acadian's request for temporary injunctive relief. The order includes ten findings to support the order, and then orders Dickerson to:

- cease any communications/solicitations with Acadian Cypress & Hardwoods, Inc. current clients;

- cease/stop any use or disclosures of confidential information to third parties including Cedar Creek, regarding confidential and/or proprietary information concerning customers of Acadian Cypress & Hardwoods, Inc.;

- cease/stop any disclosures of confidential/proprietary information regarding Acadian Cypress & Hardwoods, Inc. to third parties; and

- cease direct or indirect involvement with business which is in direct competition with the particular business lines of Acadian Cypress & Hardwoods, Inc.

We note our jurisdiction over an interlocutory appeal that seeks appellate review of a trial court's order granting temporary injunctive relief. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(4) (West Supp. 2013). In nineteen issues, Dickerson argues the trial court's order should be dissolved.

Standard of Review

We review a trial court's interlocutory ruling on a party's request for a temporary injunction for abuse of discretion. *Davis v. Huey*, 571 S.W.2d 859, 861-62 (Tex. 1978). An abuse of discretion occurs when a trial court acts in an

5

unreasonable or arbitrary manner. *See Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985). "An abuse of discretion does not exist where the trial court bases its decisions on conflicting evidence." *Davis*, 571 S.W.2d at 862.

When a trial court is not requested to enter findings of fact or conclusions of law, the evidence from a temporary injunction hearing is viewed on appeal in the light most favorable to the trial court's order; every reasonable inference from the evidence introduced at the temporary injunction hearing is indulged in the light that favors the trial court's ruling. *See Thomas v. Beaumont Heritage Soc'y*, 296 S.W.3d 350, 352 (Tex. App.—Beaumont 2009, no pet.). Viewing a trial court's ruling in the light most favorable to the evidence requires that we affirm the order granting temporary injunctive relief if we can do so on any valid legal theory that is supported by the pleadings and the evidence. *See id.; Davis*, 571 S.W.2d at 862. Here, no party requested findings, but the trial court's order includes ten findings of fact or conclusions of law. Though not required, a trial court may issue findings of fact and conclusions of law in conjunction with an interlocutory order. *See Tom James of Dallas, Inc. v. Cobb*, 109 S.W.3d 877, 884 (Tex. App.—Dallas 2003, no pet.); *see also* Tex. R. App. P. 28.1. In determining if the trial court exercised its discretion in a reasonable and principled fashion, we may consider such findings

even though the trial court was not required to make them. *See id.*; *see also Chrysler Corp. v. Blackmon*, 841 S.W.2d 844, 852 (Tex. 1992) (orig. proceeding).

A temporary injunction hearing allows the trial court to determine whether the party seeking temporary injunctive relief is entitled to "preserve the status quo of the litigation's subject matter pending a trial on the merits." *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002). To obtain temporary injunctive relief, "the applicant must plead and prove three specific elements: (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim." *Id.*

On appeal, the merits of the underlying case are not presented for appellate review; a trial court's ruling on a party's request for temporary injunctive relief is a preliminary decision. *See Tom James of Dallas*, 109 S.W.3d at 882-83. "[B]y granting a temporary injunction, a trial court does not declare that a covenant not to compete is valid." *Vaughn v. Intrepid Directional Drilling Specialists, Ltd.*, 288 S.W.3d 931, 938 (Tex. App.—Eastland 2009, no pet.). Nonetheless, if the trial court decides to grant an injunction or restraining order, Rule 683 of the Texas Rules of Civil Procedure states that the order "shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail and not by

7

reference to the complaint or other document, the act or acts sought to be restrained[.]" Tex. R. Civ. P. 683.

## Analysis

In nineteen issues, Dickerson advances three principal arguments: (1) the covenant not to compete is unenforceable; (2) Acadian has an adequate remedy at law and did not establish irreparable harm; and (3) the trial court's order, in various respects, fails to comply with the requirements of Rule 683. We will discuss Dickerson's issues from the perspective of his three principal arguments.

## Enforceability

In issues one through four, Dickerson claims that the agreement is unenforceable because he received no consideration in return for signing the covenant not to compete and because the covenant is not ancillary to an otherwise enforceable agreement. The Covenants Not to Compete Act provides that covenants not to compete are enforceable if:

> it is ancillary to or part of an otherwise enforceable agreement at the time the agreement is made to the extent that it contains limitations as to time, geographical area, and scope of activity to be restrained that are reasonable and do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee.

Tex. Bus. & Com. Code Ann. § 15.50(a) (West 2011). However, an "'otherwise enforceable'" agreement "'can emanate from at-will employment so long as the

consideration for any promise is not illusory.'" *Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson*, 209 S.W.3d 644, 648 (Tex. 2006). Additionally, when a covenant is part of an agreement that contains mutual, non-illusory promises, the requirement of an "'otherwise enforceable agreement'" is satisfied. *Marsh USA, Inc. v. Cook*, 354 S.W.3d 764, 773 (Tex. 2011).

To establish that a covenant not to compete is "'ancillary to or part of'" an otherwise enforceable agreement, the employer must show (1) that the consideration it gave in the otherwise enforceable agreement gave rise to the employer's interest in restraining the employee from competing, and (2) that the covenant was designed to enforce the employee's consideration or return promise in the agreement. *Sheshunoff*, 209 S.W.3d at 648-49. In this case, there was evidence showing that Dickerson received Acadian's confidential information after the effective date the parties entered into the written agreement containing Dickerson's non-compete. Because the evidence introduced during the hearing allowed the trial court to reasonably determine that Acadian performed its implied promise to provide Dickerson with confidential information, the trial court did not abuse its discretion in rejecting Dickerson's argument that the agreement lacked consideration. *See Sheshunoff*, 209 S.W.3d at 651; *see also Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 851 (Tex. 2009) (explaining

9

that the summary judgment evidence at issue in that case conclusively demonstrated the employer impliedly promised to supply confidential information to the employee when the parties entered the agreement).

On the evidence presented during the hearing, the trial court could also reasonably conclude that the covenants in the agreement between Acadian and Dickerson were designed to enforce Dickerson's promise that he would not compete with Acadian by using its confidential information to do so. Examples of the types of interests an employer can protect by a covenant not to compete include the employer's goodwill, as well as its confidential or proprietary information. *Sheshunoff*, 209 S.W.3d at 649. In this case, the evidence shows that Dickerson expressly agreed not to disclose confidential information, as defined in the parties' agreement, without Acadian's authorization. The trial court could reasonably conclude that the promises of the parties under the agreement were designed to allow Acadian to enforce Dickerson's obligation not to disclose its confidential information to others. *See id.*

With respect to Acadian's implied promise to provide Dickerson confidential information and his express promise to keep it confidential, the agreement provides:

Subject only to the Geographic Restriction and Time Limitation given below, Employee shall not, after the termination of his/her relationship with Company (whether voluntary or involuntary), on his/her own behalf, directly or indirectly, or on behalf of another person or entity, whether as an employee, independent contractor, owner, principal or otherwise, provide the following products and services to any client or former client of Company: domestic and imported hardwood sales, domestic and imported plywood sales, milling services, cypress proprietary products, cabinet and millwork accessories, drying services and distribution of those products in areas listed below. Furthermore, Employee shall not solicit or induce any other employee of Company to leave his or her employment.

Employee recognizes and acknowledges that he/she will have access to certain confidential information of the Company, its customers, and entities affiliated with the Company, and that such information constitutes valuable, special and unique property of the Company and such other entities. The Employee will not, during his employment or at any time thereafter, disclose any such confidential information to any person, firm, entity, association or other Company for any reason or purpose whatsoever, except to authorized representatives of the Company, its affiliated entities, successors and assigns, and state of federal [] regulators as may be required. . . . For purposes of this Agreement, the term "confidential information" means any information with respect to the Company's operations, management, policies or procedures that is: (a) designated or confirmed in writing to be confidential or for internal Company use only; (b) not made freely available by the Company to its customers nor published or otherwise made available to the public through sources entitled to disclose the same; or (c) is not or has not become known to the public through sources authorized to release such information.

The evidence introduced during the hearing demonstrated that Acadian provided Dickerson with customer lists containing contact information, sales histories, sales reports, and pricing information pertinent to Acadian's business.

11

The consideration Acadian gave to Dickerson to sign the agreement was provided by supplying him with confidential information about its customers after the effective date of the agreement.[2] In light of the promises that are found in the agreement, as well as the evidence during the hearing, the trial court properly determined that the agreement constitutes "an otherwise enforceable agreement," and that Dickerson was bound by his promise not to disclose Acadian's confidential information. *See Marsh*, 354 S.W.3d at 773. We agree with the trial court that the covenant not to compete was supported by consideration and that it is enforceable. We overrule issues one through four.

Adequate Remedy-Irreparable Harm

In issues five and six, Dickerson argues that Acadian has an adequate remedy at law because it can determine the damages caused by Dickerson's disclosures of its confidential information. Based on that argument, Dickerson

---

[2]Although Dickerson argues that he was already bound not to disclose Acadian's confidential information based on an employee handbook that is referred to in Acadian's letter that offered him employment, the contents of the handbook were not before the trial court when it determined whether the covenant not to compete was enforceable. *Methodist Hosps. of Dallas v. Tall*, 972 S.W.2d 894, 898 (Tex. App.—Corpus Christi 1998, no pet.) ("It is axiomatic that an appellate court reviews actions of a trial court based on the materials before the trial court at the time it acted."). Moreover, it appears the parties intended the agreement to control Dickerson's responsibilities with respect to the disclosure of Acadian's confidential information, as the agreement is dated as having been effective on the same date that the evidence shows that Dickerson signed his offer letter.

contends that Acadian failed to demonstrate to the trial court that it would suffer irreparable harm if the trial court refused Acadian's request for temporary injunctive relief. However, Acadian introduced evidence during the hearing showing that it had suffered a loss of market share as well as sales that it attributed to Dickerson having changed employers; and, during the hearing, Dickerson admitted that after going to work for a direct competitor of Acadian, he sold products covered by his non-compete agreement to several entities that he knew to be Acadian's customers. Thus, "'the harm was more than imminent; it was actual and ongoing.'" *Wright v. Sport Supply Group, Inc.*, 137 S.W.3d 289, 293 (Tex. App.—Beaumont 2004, no pet.) (quoting *NMTC Corp. v. Conarroe*, 99 S.W.3d 865, 869 (Tex. App.—Beaumont 2003, no pet.)). The losses to Acadian represented by these sales are partly tangible, the lost profit, but are also intangible, as they represent an interruption of relationships with clients that are difficult if not impossible to fully measure. "An injury is irreparable if the injured party cannot be adequately compensated in damages or if the damages cannot be measured by any certain pecuniary standard." *Butnaru*, 84 S.W.3d at 204.

We also are not persuaded that the evidence fails to support the trial court's conclusion that Acadian would face difficulty in determining its total damages caused by Dickerson's breaching the agreement. The testimony at the hearing

13

reflects that Acadian could determine its losses "[t]o this point," but it does not show that Acadian could, with accuracy, determine its prospective damages relating to Dickerson's breach of his non-compete. We also note that the agreement provides that Acadian has the right to enforce the agreement by "injunction, without the necessity of showing irreparable harm" for any breach by Dickerson, and Dickerson has not argued that this provision is unenforceable. *See Wright*, 137 S.W.3d at 293-94; *see also Poole v. U.S. Money Reserve, Inc.*, No. 09-08-137 CV, 2008 Tex. App. LEXIS 8257, \*\*24-26 (Tex. App.—Beaumont Oct. 30, 2008, no pet.) (mem. op.).

We conclude that the trial court could have reasonably determined that Acadian had no adequate remedy at law and that it could not presently or readily ascertain the damages it would suffer if the agreement was not enforced. Issues five and six or overruled.

## Rule 683

In issues seven through nineteen, Dickerson complains that the trial court's temporary injunction order fails to comply with the requirements found in Texas Rules of Civil Procedure Rule 683. *See* Tex. R. Civ. P. 683 (Form and Scope of Injunction or Restraining Order). According to Dickerson, there are several reasons the order fails to comply with Rule 683: (1) the limitations placed on him by the

14

trial court's order are not reasonable and impose greater restraints than are reasonably necessary to protect Acadian's interests, (2) the trial court's order is overly broad because the persons or entities that are to be treated as Acadian's current clients are not sufficiently defined, (3) the order should have been limited to Acadian's clients with whom Dickerson had dealings while he was Acadian's employee, (4) the order does not sufficiently identify the names of Acadian's current customers, (5) the order does not sufficiently identify what information about Acadian's customers the order protects as confidential information, (6) the order fails to identify what may constitute confidential information with respect to third parties, (7) the term "confidential information" is not defined in the order, (8) the order fails to sufficiently identify what will be considered "direct or indirect involvement with business in direct competition with the particular business lines of Acadian[,]" (9) the order contains no limit as to time, (10) the order is not sufficiently limited by geographical area, and (11) the order does not specify a trial date.

Because a person who violates a trial court's injunction may be held in contempt, the language enjoining a party should be clear so the parties subjected to such prohibitions are not misled. *See* Tex. R. Civ. P. 692 (providing that a party who disobeys an injunction may be punished by the court for contempt).

Consequently, Rule 683, which governs the form of injunction orders, requires the trial court to provide the reasons the order was issued and requires the terms of the order to be specific. *See* Tex. R. Civ. P. 683. Under the provisions of Rule 683, an injunction order must "set forth the reasons for its issuance; shall be specific in terms; [and] shall describe in reasonable detail and not by reference to the complaint or other document, the act or acts sought to be restrained[.]" *Id.* Rule 683 also requires that the trial court "include an order setting the cause for trial on the merits[.]" *Id.*

The language in the order before us is sufficient to explain the trial court's rationale that Dickerson violated the agreement not to compete with Acadian after he left its employment. However, the order is not sufficiently specific and does not describe in reasonable detail the act or acts the order intends to restrain. For example, the trial court's order contains no time and geographical limitations. The order does not define what individuals or entities would be considered Acadian's "current clients," nor is it clear what the court would consider to constitute the use or disclosure of confidential or proprietary information. The last paragraph of the order, which restricts Dickerson's "direct or indirect involvement with business which is in direct competition with the particular business lines of Acadian" is likewise vague. For instance, would Dickerson's direct or indirect involvement

16

include working for Cypress Creek in some role other than as a salesman, or working for Cypress Creek as a salesman but soliciting customers to purchase products that fall outside the restrictions of Dickerson's agreement with Acadian? While it is possible that the trial court would not hold Dickerson in contempt for engaging in these activities, the language in the order is less than clear. Nevertheless, the parties—undertaking in good faith to comply with that party's respective understanding of the scope of the order—could be misled by the scope of the trial court's order. Consequently, we agree with Dickerson that the trial court's order does not comply with the requirements of Rule 683.[3]

While our disposition of this issue makes it unnecessary to individually address all of Dickerson's remaining arguments, we must still determine whether we can reform the agreement and the trial court's order or whether it is necessary to remand for further proceedings. *See* Tex. R. App. P. 43.3(a); *Wright*, 137 S.W.3d at 298. In this case, from the evidence admitted at the hearing, we are unable to determine the identities of all of the entities and individuals who were customers of Dickerson while he was employed by Acadian. Additionally, we are

---

[3]We note that Rule 684 of the Texas Rules of Civil Procedure requires that the trial court order a sufficient bond when granting temporary injunctions. Tex. R. Civ. P. 684. We see no evidence in the record that a bond was ordered. Nevertheless, Dickerson has not complained in his appeal that the order is deficient for failing to set a bond.

unable to determine whether these customers were doing business in the geographic territory that is identified in the parties' agreement.

"A restraint on client solicitation in a personal services contract is overbroad and unreasonable if it extends to clients with whom the employee had no dealings during his employment." *EMS USA, Inc. v. Shary*, 309 S.W.3d 653, 660 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (citing *Peat Marwick Main & Co. v. Haass*, 818 S.W.2d 381, 386-88 (Tex. 1991)). Nevertheless, a restraint on client solicitation regarding current clients is not unreasonable on its face, but must be understood to only prohibit contact of those clients to which the employee had contact, not those clients with whom the former employee had no dealings. *Id.* In other cases involving non-compete agreements, we have stated that blanket restrictions prohibiting a former employee from working in an industry in some other capacity are overbroad and unreasonable because such restrictions impose a greater restraint than is necessary. *See generally Hodgson v. U.S. Money Reserve, Inc.*, No. 09-13-00074-CV, 2013 Tex. App. LEXIS 7207 (Tex. App.—Beaumont June 13, 2013, no pet.) (mem. op.); *Poole*, 2008 Tex. App. LEXIS 8257.

For all of these reasons, we conclude the record now before us does not contain sufficient information to allow us to redraw the trial court's order to make it sufficiently specific to comply with Rule 683; consequently, additional

18

proceedings are required. *See* Tex. R. App. P. 43.3(a). Therefore, we reverse the trial court's order granting Acadian temporary injunctive relief, dissolve the temporary injunction, and remand the cause to the trial court for further proceedings consistent with this opinion.

REVERSED AND REMANDED.

_____
HOLLIS HORTON
Justice

Submitted on December 4, 2013
Opinion Delivered April 10, 2014

Before McKeithen, C.J., Kreger and Horton, JJ.