

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-19-00003-CV
_____

SOUTH PLAINS SNO, INC., APPELLANT

V.

ESKIMO HUT WORLDWIDE, LTD., APPELLEE

_____

On Appeal from the 251st District Court
Randall County, Texas
Trial Court No. 73,454-C, Honorable Ana Estevez, Presiding

_____

April 12, 2019

## MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

This is an interlocutory appeal from the grant of a temporary injunction[1] in a dispute between a frozen-drink franchisor, appellee Eskimo Hut Worldwide, LTD, and one of its franchisees, appellant South Plains Sno, Inc. The parties' dispute centers on a frozen drink marketed to the public as a to-go item. Their litigation began when South Plains sued Worldwide alleging breaches of the franchise agreement. Worldwide filed a

---

[1] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(4) (West Supp. 2018) (providing appeal of an interlocutory order that grants or refuses a temporary injunction).

counterclaim also asserting breaches of the agreement. Worldwide sought a temporary injunction which the trial court granted. We will overrule South Plains' four appellate issues and affirm the trial court's injunction order.

## Background

Worldwide president Kevin Morgan testified at the temporary injunction hearing that Worldwide franchises Eskimo Hut convenience stores. The stores specialize in selling frozen daiquiris to go, referred to in the record as "Eskimo Hut branded daiquiris." The company has more than twenty franchises with stores located in cities throughout Texas. Morgan individually owns twelve stores. In 2014, South Plains became a Worldwide franchisee under the Eskimo Hut brand. Hearing evidence showed South Plains operates three Eskimo Hut stores in Lubbock.

Morgan explained in testimony that the Eskimo Hut frozen drink process begins with a corn syrup "base mix" which Worldwide sells to its franchisees. The base mix, water and, if desired, wine or another alcoholic beverage,[2] are combined and frozen. A flavor of the customer's selection is then added to create the desired drink.

While Worldwide approves the drink flavorings, the franchisee must supply the alcohol, because for Worldwide to do so, according to Morgan, would not be legal. Worldwide does not require franchisees to buy alcohol from a particular vendor nor does it specify the type of alcohol franchisees may add to the drink mixture. The drink is mixed according to Worldwide's directions, but the franchisee determines what, if any, amount

---

[2] Testimony at the hearing sometimes referred to the alcoholic beverage contained in a daiquiri as wine and sometimes as alcohol. Henceforth we will use the word alcohol for simplicity.

of alcohol to add.  Franchisees are not required to use alcohol at all in the frozen drinks they sell.

According to Morgan's testimony, South Plains has violated the franchise agreement because it does not use the required base mix and flavors.  There was hearing evidence that South Plains has either stopped purchasing Worldwide's base mix or is purchasing an amount insufficient to prepare the drink product according to Worldwide's specifications.  In his hearing testimony, Brad Salley, owner of South Plains, did not deny that South Plains uses two ounces of Worldwide base mix in a drink batch rather than the specified three gallons.  On cross-examination he conceded, "I am not currently following that exact recipe, no."

Worldwide placed the franchise agreement in evidence at the hearing and on appeal points to the following provisions as relevant:

> Section 7.A. – Franchisee agrees to comply with the uniform standards for quality, appearance, cleanliness, service, and promotion established from time to time by [Worldwide].  Franchisee acknowledges that these standards and the requirements of this Agreement are necessary, reasonable, and desirable in order to preserve and enhance the identity, reputation, and goodwill built by the Franchise System and the value of the Franchise.
>
> Section 7.D. – Franchisee agrees to promote, prepare, and sell only the frozen drink and combinations as specified by [Worldwide] in the Confidential Operating Manual, if any, and any operations bulletins supplied by [Worldwide].
>
> Section 7.F.(1) – Franchisee shall purchase only from [Worldwide] (if offered directly to Franchisee by [Worldwide]) or from [Worldwide] approved suppliers who have acquired such products through [Worldwide], all of its requirements for frozen drink mixes and such other future products as may then be required by Eskimo Hut Worldwide (collectively referred to as "Required Products").
>
> Section 7.G.(1) – All drink products . . . shall be in full compliance with the specifications set forth in the Confidential Operating Manual or any

3

operations bulletins and . . . shall be purchased and procured by Franchisee from either Eskimo Hut Worldwide (if offered by Eskimo Hut Worldwide), from suppliers designated by [Worldwide], or from suppliers selected by Franchisee and not disapproved in writing by [Worldwide].

Section 7.H. – Franchisee understands that it is essential to the proper preparation of all frozen beverage menu items that Eskimo Hut Worldwide's methods of preparation (according to specifications prepared and supplied by Eskimo Hut Worldwide) be used, and that they must be used as directed. Franchisee agrees to adopt and use such changes and methods and materials in the preparation of all frozen beverage menu items, if any, as may be directed from time to time by Eskimo Hut Worldwide.

Morgan further testified it is important that each franchisee deliver a consistent drink product. When asked how this is possible, given the franchisee's control of the alcohol added to the drink mixture, Morgan explained the base mix contains the sugars that give the drink its unique taste.[3] On cross-examination when asked about drink inconsistency because each franchisee could use a different alcohol, Morgan responded, "you can get very close where you wouldn't be able to taste a difference."

Morgan testified he had "no idea of the product" South Plains was delivering. He found the fact "terrifying" because "if [South Plains] puts in some cheap product and the drink tastes terrible, I am liable to lose customers for the rest of my life that I can't ever get back." Morgan's direct examination questioning concluded with the following exchange:

Q. And we have talked about brand integrity. What risk does [Worldwide] have if [South Plains] is selling a different product than the other Eskimo Huts?

A. Well, the risk is huge. I don't know what product it is. It could be a bad product. It could be a cheap product. I mean, it might turn people off and then they never visit another Eskimo Hut ever again. Those people are hard

---

[3] Elsewhere in his testimony Morgan told the court "It is the sugars that we use that make our product our product."

4

to get in your doors and they are hard to keep. I mean, retail is a very difficult business.

Q. And is there any way for [Worldwide] to calculate the potential damage that it is going to suffer if [South Plains] continues to use unauthorized product?

A. No.

After hearing the evidence, the trial court granted temporary injunctive relief for Worldwide, prohibiting South Plains from:

i. Selling, and/or using non-Eskimo Hut base mix in any store operated by South Plains under the Eskimo Hut trade name; and

ii. Preparing and selling frozen drink products in any manner other than as specified by [Worldwide] in the Confidential Operating Manual or any operations bulletins supplied by [Worldwide].

South Plains perfected its appeal.

Analysis

I. Legal Background

"A temporary injunction is an extraordinary remedy and does not issue as a matter of right." *Butnaru v. Ford Motor Co.,* 84 S.W.3d 198, 204 (Tex. 2002) (op. on reh'g) (citing *Walling v. Metcalfe,* 863 S.W.2d 56, 57 (Tex. 1993)). The standard for appellate review of an order granting or denying an application for temporary injunction is abuse of discretion. *Id.* A trial court abuses its discretion when it acts unreasonably or in an arbitrary manner or without reference to any guiding rules and principals. *Id.* at 211. A trial court does not abuse its discretion if some evidence reasonably supports its decision. *Id.* In its review of a trial court's order of temporary injunction, an appellate court does

not resolve factual disputes.  *Bright Land & Cattle, LLC v. PG-M Int'l, LLC,* No. 07-16-00336-CV, 2017 Tex. App. LEXIS 2083, at *6 (Tex. App.—Amarillo Mar. 9, 2017, no pet.) (mem. op.).  Instead, potentially conflicting evidence is interpreted in the light most favorable to the trial court's decision.  *Id.*  All legitimate inferences drawn from the evidence are also interpreted in the light most favorable to the trial court's decision.  *Id.*

A temporary injunction preserves the status quo of the subject matter of a suit pending a final trial of the case on its merits.  *Camp v. Shannon,* 162 Tex. 515, 348 S.W.2d 517, 519 (1961).  "Consistent with the purposes of a temporary injunction, an appeal of such an order does not present the merits of the underlying case for review, but only whether the trial court abused its discretion in determining whether or not the applicant is entitled to the preservation of the status quo pending determination of those merits."  *Comed Med. Sys., Co. v. AADCO Imaging, LLC,* No. 03-14-00593-CV, 2015 Tex. App. LEXIS 1762, at *11 (Tex. App.—Austin Feb. 25, 2015, no pet.) (mem. op.).

To obtain a temporary injunction, the applicant must plead and prove (1) a cause of action against the defendant, (2) a probable right of recovery, and (3) a probable, imminent, and irreparable injury in the interim.  *Butnaru,* 84 S.W.3d at 204.

## II.  Probable Right of Recovery

A probable right of recovery is proven by alleging the existence of a right and presenting evidence tending to illustrate that the right is being denied.  *Friona Indep. Sch. Dist. v. King,* 15 S.W.3d 653, 657 (Tex. App.—Amarillo 2000, no pet.).  The movant for a temporary injunction is not required to prove ultimate success on its cause of action; rather, the movant's burden is met simply by alleging a cause of action and presenting

evidence tending to sustain it. *Bright Land & Cattle, LLC,* 2017 Tex. App. LEXIS 2083, at *5.

By its first issue, South Plains asserts Worldwide presented no evidence of a probable right of recovery.

Hearing evidence showed that South Plains either stopped purchasing the only approved base mix from Worldwide or purchased only a nominal amount. As noted, the parties' franchise agreement requires South Plains to comply with uniform standards and prepare Eskimo Hut-branded frozen drinks according to recipes issued by Worldwide.

In his testimony, Salley described for the court the drink recipe South Plains uses. As he described it, to make a batch of Eskimo Hut drinks South Plains uses two ounces of base mix rather than the three gallons called for by the Worldwide recipe. He explained the ingredient South Plains uses to substitute for the greater amount of Worldwide's base mix.[4] Salley expressed his opinion that the resulting drink is "extremely close to what we have always served." When asked on cross-examination if South Plains was following Worldwide's specifications and recipes for drinks, Salley replied he no longer believed the franchise agreement to be "legal." He then acknowledged South Plains was not following the Worldwide recipe.

Salley's testimony provides evidence South Plains is not complying with the franchise agreement, including section 7.A.'s uniform standards; section 7.G.(1) and section 7.H.'s methods of preparation; section 7.D.'s mandate that the franchisee prepare

---

[4] Salley later explained the "batch tank recipe" South Plains uses calls for a twelve-liter bag of a product he described as "Other Than Standard Orange Wine" and two gallons of water. Two ounces of Worldwide's base mix are then added.

and sell only the frozen drink products and combinations specified by Worldwide; and section 7.H.'s requirement that the franchisee adopt Worldwide's changes in methods and material in preparation of frozen beverage menu items. We find Worldwide presented sufficient evidence tending to substantiate its breach of contract cause of action.

By its fourth issue, South Plains asserts the provisions of section 7 of the franchise agreement requiring that it prepare alcoholic drinks according to Worldwide's specifications are illegal and therefore unenforceable. As a result, the argument concludes, Worldwide failed to show a probable right of recovery on its breach of contract claim.

For its contention, South Plains relies on an excerpt from section 109.53 of the Alcoholic Beverage Code. "Every permittee shall have . . . exclusive control of the entire licensed premises in every phase of the storage, distribution, possession, and transportation and sale of all alcoholic beverages purchased, stored or sold on the licensed premises. Any device, scheme or plan which surrenders control of the employees, premises or business of the permittee to persons other than the permittee shall be unlawful." TEX. ALCO. BEV. CODE ANN. § 109.53 (West 2007). South Plains cites no case supporting its contention that "[b]y dictating the specific recipe to be used for the alcoholic daiquiris made and sold by South Plains, [Worldwide] has concocted a scheme which causes South Plains to surrender control of its business, in violation of Section 109.53 [of] the Texas Alcoholic Beverage Code."

On the temporary hearing record before us, we cannot find South Plains presented the trial court with a persuasive showing that illegality under section 109.53 precluded Worldwide from establishing a probable right of recovery for breach of the franchise

8

agreement. Because some evidence reasonably supported the trial court's finding that Worldwide demonstrated a probable right of recovery, no abuse of discretion has been shown. South Plains' first and fourth issues are overruled.

## III. Probable, Imminent, and Irreparable Injury

By its second issue, South Plains argues the trial court abused its discretion by granting a temporary injunction because no evidence supported a finding of probable, imminent, and irreparable injury before trial. In its third issue, South Plains argues the franchise agreement's extraordinary relief clause was insufficient to prove irreparable injury. We will discuss these issues jointly.

The movant for a temporary injunction must establish that it is threatened with an actual irreparable injury if the injunction is not granted. *See, e.g., Marketshare Telecom, L.L.C. v. Ericsson, Inc.,* 198 S.W.3d 908, 925 (Tex. App.—Dallas 2006, no pet.) (citing *Markel v. World Flight, Inc.,* 938 S.W.2d 74, 80 (Tex. App.—San Antonio 1996, no pet.)). "An injury is irreparable if the injured party cannot be adequately compensated in damages or if the damages cannot be measured by any certain pecuniary standard." *Butnaru*, 84 S.W.3d at 204.

The franchise agreement in relevant part provides:

**Extraordinary Relief**. It is specifically understood and agreed that Eskimo Hut Worldwide will incur incalculable and irreparable damage from any violation of sections . . . 7.A. . . . of this Agreement . . . and that Eskimo Hut Worldwide has no adequate remedy at law and is entitled to injunctive relief, including specific performance, for any such action or threatened violation. All remedies conferred on either party shall be cumulative.

9

Neither from the parties' briefing nor in our own research have we located Texas authority finding such contract language sufficient, standing alone, to authorize a court to grant injunctive relief. *See Wright v. Sport Supply Grp., Inc.,* 137 S.W.3d 289, 293-94 (Tex. App.—Beaumont 2004, no pet.) (considering effect of similar clause); *Sec. Telecom Corp. v. Meziere,* No. 05-95-01360-CV, 1996 Tex. App. LEXIS 806, at *5-7 (Tex. App.—Dallas Feb. 29, 1996, no writ) (not designated for publication) (finding such language in non-competition agreement could not serve as a "stipulation" of the nature of the damages suffered when the validity and enforceability of the agreement was at the core of the merits of the case). At the least, however, the clause serves to emphasize that brand recognition and uniform standards among franchisees are at the core of the parties' agreement and benefit both Worldwide and South Plains. Through the extraordinary relief clause South Plains agreed its violation of section 7.A. of the franchise agreement *will* produce in Worldwide incalculable and irreparable damage for which no adequate remedy at law lies. We find the trial court could have viewed the extraordinary relief clause as providing some support for its conclusion South Plains' actions placed Worldwide at risk of irreparable injury. *Cf. Wright,* 137 S.W.3d at 293-94.

South Plains argues that because Worldwide does not control the amount or type of alcohol added to the daiquiris, consistency among drinks sold by different franchisees is impossible. It follows, South Plains argues, that Worldwide failed to prove it will suffer irreparable injury without the injunction. But the trial court heard the following exchange during Morgan's cross-examination testimony:

> Q. And you would agree with me that if every franchisee is using a different wine, that there would not be a consistent product across the board for each franchisee?

10

A. No.

Q. No, you wouldn't?

A. No, I would not.

Q. Okay.

A. The flavor comes out through the Base Mix and through the flavors.  That is how you get the taste.  The wine is tasteless.  That is what it is.

In a temporary injunction hearing the trial court, as factfinder, judges the credibility of the witnesses and assigns what weight it chooses to their testimony.  *Sills v. Wedgeworth,* No. 09-17-00481-CV, 2018 Tex. App. LEXIS 5247, at *10 (Tex. App.—Beaumont July 12, 2018, no pet.) (mem. op.) (citing *State Bd. of Ins. v. Prof'l & Bus. Men's Ins. Co.,* 359 S.W.2d 312, 321-22 (Tex. Civ. App.—Austin 1962, writ ref'd n.r.e.)).  We are bound to view the evidence in the light most favorable to the trial court's decision.  *Bright Land & Cattle,* 2017 Tex. App. LEXIS 2083, at *6.  Contrary to South Plains' argument, we find the trial court could have resolved the conflicting evidence in favor of a conclusion that its refusal to use the base mix in the prescribed proportions jeopardized the consistency of Eskimo Hut branded daiquiris among franchisees, threatening Worldwide with an actual irreparable injury.  *See, e.g., Marketshare Telecom,* 198 S.W.3d at 925.  Salley's testimony provided evidence of a difference in taste between daiquiris made with the recipe South Plains uses and those made in Worldwide's prescribed manner.[5]  That testimony, coupled with that describing the significant difference in the recipe Worldwide prescribes for drink batches and that being used by South Plains, allowed the trial court

---

[5] He referred to Worldwide's current recipe as "undrinkable," and said South Plains' is "a very, very good drink."

11

to conclude that in a practical sense South Plains was selling, as an Eskimo Hut branded daiquiri, a different drink than other franchisees.

The undisputed refusal of South Plains to comply with the noted requirements of the agreement and Morgan's testimony provide some evidence of imminent injury. Indeed, the evidence that its franchisee was making and selling a non-conforming product allowed a reasonable inference that Worldwide was suffering ongoing harm.

Concerning irreparable injury, South Plains argues Worldwide's damages are not incalculable because it is possible to determine the profits it would have received from the sale of base mix to South Plains. But based on the testimony it heard the trial court was free to conclude that profits from sale of base mix was not the only interest of Worldwide at risk from South Plains' actions. Instead, it reasonably could infer that the injury to Worldwide's Eskimo Hut brand and reputation from South Plains' marketing of a non-conforming product is irreparable. *Butnaru,* 84 S.W.3d at 204. Such a conclusion is consistent also with the parties' agreement that a failure to observe uniform standards would cause Worldwide irreparable damage.

Based on the evidence this record presents, viewed under the standard we are bound to follow, we conclude the trial court reasonably could have found probable, imminent, and irreparable injury before trial. In so finding, it did not abuse its discretion. South Plains' second and third issues are overruled.

Conclusion

Having overruled each of South Plains issues, we affirm the order of the trial court.

Per Curiam